Berry N. ODOM, Appellant,

v.

UNITED STATES, Appellee.

No. 05–CF–967.

District of Columbia Court of Appeals.

Argued June 4, 2007.

Decided July 12, 2007.

As Amended Aug. 16, 2007.

Matthew C. Leefer, Boonsboro, MD, appointed by the court, for appellant.

Suzanne C. Nyland, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney, and Roy W. McLeese III, David B. Goodhand, and Jonathan W. Haray, Assistant United States Attorneys, were on the brief, for appellee.

Before WASHINGTON, Chief Judge, GLICKMAN, Associate Judge, and KING, Senior Judge.

GLICKMAN, Associate Judge:

After a jury trial, appellant Berry Odom was convicted of aggravated assault while armed ("AAWA"), assault with a dangerous weapon ("ADW"), and carrying a dangerous weapon. The trial court sentenced him to serve consecutive terms of imprisonment for the three offenses. In this court, appellant advances two claims. First, he contends—correctly, as the government concedes—that his conviction for ADW merges with his conviction for AAWA. *See Gathy v. United States,* 754 A.2d 912, 919 (D.C.2000) (holding that ADW is a lesser included offense of AAWA). Accordingly, we shall remand for the trial court to vacate appellant's ADW conviction.

Second, appellant contends that the trial court erred by denying his request to sanction the government and provide an appropriate remedy for a *Brady*[1] due process violation. Appellant was charged with a stabbing that occurred on June 7, 2004. The following day, a witness named Naomi Hassan viewed a photo array containing appellant's picture and selected the photograph of someone else (a person who was not a suspect). Shortly afterward, according to the prosecutor's undisputed proffer, Hassan left the Washington, D.C. area; she was gone by the time the charges against appellant were presented to the grand jury in August and September of 2004. Appellant, who was arrested on June 20, was indicted on September 28, 2004. The government did not inform appellant of Hassan's arguably exculpatory non-identification of him until mid-December, which was still three months before trial. Appellant then sought to find Hassan with the assistance of a "skip trace program," without success. The government also was unable to locate Hassan by the time of trial. As a result, Hassan was not available to testify at trial.

The trial court deemed the government to have violated its obligations under *Brady* because its disclosure of Hassan's non-identification to appellant was not timely. Appellant asked the court to sanction the government and remedy the violation (or at least mitigate its effects) by allowing him to elicit testimony from a detective that Hassan had not identified him. The government opposed appellant's request and persuaded the court to deny it on the ground that Hassan's out-of-court non-identification would be inadmissible hearsay under D.C.Code § 14–102(b)(3) (2001).[2]

■■■■ On appeal, the government concedes that this hearsay rationale for denying the proposed relief was erroneous.[3] In lieu of granting a continuance or a mistrial or striking the government's evidence, a trial court has discretion to fashion other appropriate remedial sanctions for the gov-

---

1. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

2. In pertinent part, the statute provides that an out-of-court "identification of a person made after perceiving the person" is substantive evidence and not hearsay if the declarant testifies at trial and is subject to cross-examination concerning the identification.

3. "We agree with appellant," the government states in its brief,

that D.C.Code § 14–102(b)(3) was not an absolute bar to his requested sanction.... If the government's disclosure had been untimely under *Brady*, the trial court had the authority to permit the defense to question Detective McDonald about Hassan's misidentification regardless of whether Section 14–102(b)(3)'s requirements were satisfied.

ernment's failure to make timely disclosure of apparently material, exculpatory evidence as the Constitution requires. As we have said in the case of a party's violation of its discovery obligations under Criminal Rule 16,[4] "[t]he trial judge enjoys a broad range of possible sanctions, with the sole limitation being that the sanction be just under the circumstances." *Allen v. United States,* 649 A.2d 548, 552 (D.C. 1994) (internal quotation marks and citation omitted); *see* Super. Ct.Crim. R. 16(d)(2). Thus the trial court has discretion to allow a defendant to introduce otherwise inadmissible exculpatory hearsay in order to remedy a perceived *Brady* violation that has impeded the defendant from presenting the declarant's exculpatory testimony at trial. *See People v. Jackson,* 168 Misc.2d 182, 637 N.Y.S.2d 158, 164 (Sup. Ct.1995), *aff'd,* 264 A.D.2d 683, 695 N.Y.S.2d 357 (1999).

Notwithstanding its concession on the merits of appellant's second claim of error, the government asks us to affirm appellant's convictions on the alternative ground that no sanction was warranted because no *Brady* violation was established. *See, e.g., Prince v. United States,* 825 A.2d 928, 931 (D.C.2003) ("[I]t has long been held that an appellate court may uphold a trial court decision for reasons other than those given by that court.") (citations omitted). We agree with the government's alternative ground for affirmance.

In *Brady,* the Supreme Court held that the government has a constitutional duty to disclose material, exculpatory evidence in time for the defense to make effective use of it at trial. *See Boyd v. United States,* 908 A.2d 39, 56–57 (D.C. 2006). Materiality is a critical requirement; "strictly speaking," the Court has explained, "there is never a real *'Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene,* 527 U.S. 263, 281, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Consequently, delay by the government in disclosing exculpatory evidence before trial warrants reversal of a conviction "only if there [exists] a reasonable probability that, had the disclosure been made earlier, the result of the proceeding would have been different." *Boone v. United States,* 769 A.2d 811, 821 (D.C.2001). The record in the present case fails to show such a reasonable probability with respect to the government's delayed disclosure of Hassan.

Appellant had three months in which to search for Hassan, and there is no reason to believe that earlier disclosure would have made it more likely that appellant would have located her before trial. *Cf. Curry v. United States,* 658 A.2d 193, 198 (D.C.1995). Even assuming otherwise, Hassan's live testimony would have done little to refute the government's compelling proof of appellant's identity. Appellant was identified as the assailant by three eyewitnesses and also incriminated by the backpack he accidentally left at the scene of the crime, which contained personal papers and prescription medicines bearing his name. We therefore see no reasonable probability that Hassan's potential non-identification testimony would have changed the outcome of the trial.

Appellant's convictions are hereby affirmed. The case is remanded for the trial court to vacate appellant's ADW conviction.

*So ordered.*

---

4. Super. Ct.Crim. R. 16.